Betty **RODNER** and Joseph Quittner and Herman Levine, as Executors under the Last Will and Testament of Harold Rodner, deceased, Plaintiffs.

v.

**UNITED STATES of America,**
Defendant.

United States District Court
S. D. New York.

Feb. 6, 1957.

Joseph Quittner, New York City, for plaintiffs.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City, for defendant, Arthur B. Kramer, Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

This action to recover income tax is based upon the theory that the fund taxed was a gift and thus exempt under section 22(b) (3) of the Internal Revenue Code of 1939, as amended, 53 Stat. 10, 26 U.S.C. § 22(b) (3) (1946).

The amount in question was paid to plaintiff Betty Rodner after the death of her husband Harold Rodner by his employer Warner Bros. Service Corp. She included the amount as taxable income in an income tax return for the year in which the payment was received. This was a joint return covering her income for the entire year and her husband's income for that part of the year during which he lived. The tax was paid in full and this suit is brought by the widow and the decedent's executors for a refund of the tax upon the amount of the alleged gift.

The plaintiff Betty Rodner is the widow of Harold Rodner who died on June 3, 1952. At the time of his death Harold Rodner was Vice President of the Warner Bros. Service Corporation, a wholly-owned subsidiary of Warner Bros. Pictures, Inc. Rodner's salary at the time of his death was $500 a week. Mr. Rodner had been employed by Warner Bros. Service Corporation from 1946. Prior to 1946, he had been employed by other affiliates and subsidiaries of Warner Bros. Pictures, Inc. for about 18 years. On June 9, 1952 Mrs. Rodner received a check for $13,000 from the Circuit Settlement Corporation, which was the disbursing agent for the Warner Bros. Service Corporation and various other subsidiaries and affiliates of Warner Bros. Pictures, Inc. This $13,000 which was paid to Mrs. Rodner was taken as a deduction from gross income—as an expense for business management and

not as wages or salaries—by Warner Bros. Pictures, Inc. in the consolidated corporate income tax return which it filed with the Collector of Internal Revenue for the fiscal year ending August 31, 1952.

The decision to make the $13,000 payment to Mrs. Rodner was reached by the following officers of Warner Bros. Pictures, Inc.: Mr. Schneider, Vice President; Mr. Carlisle, Assistant Treasurer; Mr. Martin, Auditor; and Mr. W. Stewart McDonald, Assistant Treasurer.

One of those officers testified that in reaching the decision they agreed that they respected the decedent and would like to make a payment to his widow. They took into consideration as well his length of service, the character of the services that he had rendered, his loyalty to the organization and the importance of his position. There was no testimony that they took into account the needs of his widow.

The payment to Mrs. Rodner was never authorized by the Board of Directors of Warner Bros. Service Corporation or by the Board of Directors of the parent corporation, Warner Bros. Pictures, Inc. It was never authorized or ratified by the stockholders of the Service Corporation or of the parent corporation, Warner Bros. Pictures, Inc. The amount to be paid to Mrs. Rodner was fixed with reference to Mr. Rodner's salary at the time of his death; the lump-sum payment was equivalent to Mr. Rodner's salary for 26 weeks.

For the period between September 1, 1946 and August 29, 1953, Warner Bros. Pictures, Inc. and its theatre subsidiaries made the following payments to widows of deceased officers and executives:

| Name | Date of Death | Position at Time of Death | Amount of Payment |
|------|---------------|---------------------------|-------------------|
| John J. Payette | 7-31-48 | Zone Manager | $35,000.00 |
| Charles H. Ryan | 1-13-51 | District Manager | 500.00 |
| John Hesse | 8-16-53 | District Manager | 1,500.00 |
| Thomas J. Fordham | 4-18-48 | District Manager | 3,000.00 |
| Ray C. Brown | 3-1-51 | District Manager | 700.00 |
| Abel A. Vigard | 3-25-47 | Legal Department | 5,600.00 |
| Leonard S. Schlesinger | 3-29-48 | President of Warner Bros. Service Corporation | 15,000.00 12,051.82* |
| Harold Rodner | 6-4-52 | Vice President of Warner Bros. Service Corporation | 13,000.00 |
| Frank N. Phelps | 6-15-53 | Labor Relations Department | 2,500.00 |

* Payment to Estate of Leonard S. Schlesinger, Deceased.

Mr. Leonard S. Schlesinger was the only corporate officer of Warner Bros. Pictures, Inc. and its theatre affiliates and subsidiaries, other than Harold Rodner, who died during this period. Mr. John J. Payette was the only zone manager who died during this period. Mr. Charles H. Ryan, Mr. John Hesse and Mr. Thomas J. Fordham and Mr. Ray C. Brown were the only district managers who died during this period. Mr. Abel A. Vigard was the only lawyer employed by the Legal Department and Mr. Frank N. Phelps was the only professional employee of the Labor Relations Department who died during this period.

The plaintiffs, Betty Rodner and Joseph Quittner and Herman Levine, as Executors of Harold Rodner's estate, filed a joint income tax return for the calendar year 1952, in which they reported the $13,000 received by Mrs. Rodner as taxable income. The total income disclosed in the return was $28,301.31. On this amount, the plaintiffs paid a tax of $6,834.72. On November 21, 1954, plaintiffs filed with the Commissioner of Internal Revenue an amended claim for refund in which they sought to recover $4,622.24—a portion of the taxes paid and interest—on the theory that Warner Bros. Pictures had made a gift of $13,000 to Mrs. Rodner.

The payment made to decedent's widow and the payments made to the widows of other executives above referred to were entirely voluntary. There was no plan under which such payments were made other than can be inferred from the fact that they were made. Decedent's salary was paid in full up to the date of his death and decedent's widow rendered no services to his employer or any of its affiliates.

The Income Tax Laws beginning with the 1913 Act have always exempted gifts. 38 Stat. 114, ch. 16, Sec. II, par. B, p. 167.

Just as consistently, the Income Tax Laws have always levied a tax upon "salaries, wages or compensation for personal service * * *", e. g. 38 Stat. 114, ch. 16, Sec. II, par. B; section 22(a) of the Internal Revenue Code of 1939.

The line between gifts and compensation was drawn by the Supreme Court in *Bogardus v. Commissioner*, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, where payments were held to be gifts. The Court said in 302 U.S. on page 44, 58 S.Ct. 66, "A gift is none the less a gift because inspired by gratitude for the past faithful services of the recipient." The Court remarked, 302 U.S. on page 43, 58 S.Ct. on page 65, that the facts indicated that the intention of the persons who decided that the payments should be made "was to make gifts in recognition of, not payments for, former services".

■ Payments by an employer to an employee or his estate are strongly presumed to be made for services and consequently not gifts. *Willkie v. Commissioner*, 6 Cir., 127 F.2d 953, 955.

■ Payments made by an employer to a beneficiary of an employee, if made pursuant to an enforcible contract between employer and employee, are not gifts even though the beneficiary has done nothing to earn them.[1] The beneficiary has a legal right to them under *Lawrence v. Fox*, 20 N.Y. 268.

■ That leaves the question which I deem to be presented in this case: is a gratuitous payment by an employer to a presumptive beneficiary of a deceased employee a gift?

In every case where the question has been squarely presented the answer has been in the affirmative. *Reardon v. Commissioner of Internal Revenue*, U. S. Tax Court, Docket No. 49817, filed June 15, 1955; *Matthews v. Commissioner of Internal Revenue*, U. S. Tax Court, Docket Nos. 55433, 57765, filed February 29, 1956; *Estate of Arthur W. Hellstrom*, 1955, 24 T.C. 916.

---

[1] Flarsheim v. United States, 8 Cir., 156 F.2d 105; Varnedoe v. Allen, 5 Cir., 158 F.2d 467; Sutro v. U. S., 42-2 U.S. T.C. Rep. C.C.H. Para. 9523.

In Fisher v. United States, D.C.Mass., 129 F.Supp. 759, the court treated as compensation what seemed to have been a gratuitous payment to the employee's widow but the fact that the amounts paid were " 'the balance of retirement compensation voted' " to the employee in his lifetime was held, at page 762, to characterize them as compensation in the hands of his widow. While it is hard to see why the balance of compensation voted to the employee ought not to have been paid to his personal representative rather than to his widow, the case need not concern us here since the amount paid the widow here was never voted as compensation to the decedent.

I can find no basis for treating the payment as anything but a gift. It was not paid to the employee or his estate so there is no presumption that it was compensation. The widow had no legal or moral right to it so it was a gratuity.

It is suggested that the fact that, in the case of every married executive who died between 1946 and 1952, a payment was made to his widow proves a custom and that the custom had refined into a sort of pension plan. That must mean that, while the first few payments were gifts and therefore non-taxable, a point was finally reached where the later payments were in satisfaction of a legal obligation. This seems little more than an appeal to that weakness in human nature that, when a privilege is often enough extended, comes to regard it as a right. However that might be under different circumstances, it is impossible to spell out an enforcible plan here because no pattern as to the amount of payments is apparent.

In two instances non-judicial interpretations have looked in a direction away from my conclusion that a gratuitous payment by an employer to a presumptive beneficiary of a deceased employee is a gift within the exempting provision of the income tax law. One of these non-judicial interpretations is I. T. 4027, Cum. Bul. 1950–2, p. 9, and the other is a statement in the Report of the Senate Committee on Finance on the proposed Internal Revenue Code of 1954 which recommended that the law in effect at the time of the transfers here involved be amended.

The first of these non-judicial interpretations, I. T. 4027, modifies the earlier I. T. 3329, Cum. Bul. 139–2, 153, which stated: "When an allowance is paid by an organization to which the recipient has rendered no service, the amount is deemed to be a gift or gratuity and is not subject to Federal income tax in the hands of the recipient." The new ruling, I. T. 4027 states: "It is the position of the Bureau that irrespective of a 'plan', voluntary or involuntary, definite or indefinite, payments of the type herein considered constitute taxable income, and it is held that payments made by an employer to the widow of a deceased officer or employee, in consideration of services rendered by the officer or employee, are includible in the gross income of the widow for Federal income tax purposes." I take it that this means that, even though the transfers to the widow are "gifts in recognition of" rather than "payments for" former services, to use the language used in a somewhat different connection in Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, supra, the amounts thereof constitute taxable income. As above indicated, I disagree.

I now take up the second of these non-judicial interpretations, Report No. 1622, 83rd Congress 2d Session, of the Senate Committee on Finance on the proposed Internal Revenue Code of 1954. The part which concerns us here deals with the provisions of the then existing income tax law which, in effect, exempted $5,000 of payments made under a contract of an employer providing for payments to a beneficiary of an employee by reason of the death of the employee. Those provisions are section 22(b) (1) (A) and (B) of the Internal Revenue Code of 1939, as amended by 65 Stat.

483 (1951) which are quoted in the margin.[2]

By those provisions Congress excluded from gross income for income tax purposes the first $5,000 of amounts paid as death benefits to a beneficiary of an employee pursuant to contract. As stated above footnote 1, death benefits paid to a beneficiary pursuant to contract are not exempt as gifts. I do not believe that Congress would favor exempting up to $5,000 death benefits paid pursuant to contract but taxing the whole of gratuitous death benefits. If I am right in this thought, the provision in section 22(b) (1) (B) of the Internal Revenue Code of 1939 limiting the $5,000 exemption to death benefits paid under contract was in perfect harmony with the above cited cases which hold gratuitous death benefits to be exempt as gifts. The legislative intention seems to me to have been that all death benefits that were gratuitous should be exempt and all over $5,000 that were paid under contract should be taxable.

The Internal Revenue Code of 1954 (not applicable here) changed this. Section 101(b), 68A Stat. 26, quoted in the margin,[3] eliminates the provisions limiting to contractual death benefits the application of the $5,000 exemption. To me the effect of this would seem to be to withdraw the complete exemption that gratuitous death benefits had enjoyed and to substitute an exemption up to $5,000.

In the complete revision effected by the 1954 Code the general language exempting gifts is controlled by the particular language of section 101(b) limiting the exemption of death benefits to $5,000. Gifts in general are exempt but gifts in the form of death benefits are taxable insofar as they exceed $5,000.

That does not seem to have been the view of the Senate Committee on Finance of a subsequent congress, however. In the Report referred to, p. 14, the Committee deals with this very change and says "The exclusion is * * * made available regardless of whether the employer has a contractual obligation to pay the death benefits." That language is certainly that of some one who thinks that the new provision extends a boon instead of a burden to the recipients of gratuitous death benefits. With the utmost respect, I believe that the Committee's view of the prior law was a misinterpretation. Even if the Congress itself were to solemnly declare the meaning of legislation adopted at a previous session it would have no more effect than an executive interpretation such as I. T. 4027, supra. Fire Companies Bldg. Corp. v. Commissioner of Int. Rev., 2 Cir., 54 F.2d 488, 489; American Exchange Securities Corp. v. Helvering, 2 Cir., 74 F.2d 213, 214. Thus I am not required to accept the interpretation of the Senate Committee and I adhere to my view that gratuitous

2. "(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:
"(1) Life insurance, etc. Amounts received—
"(A) under a life insurance contract, paid by reason of the death of the insured; or
"(B) under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee; whether in a single sum or otherwise (but if such amounts are held by the insurer, or the employer, under an agreement to pay interest thereon, the interest payments shall be included in gross income). The aggregate of the amounts excludible under subparagraph (B) by all the beneficiaries of the employee under all such contracts of any one employer may not exceed $5,000."

3. "(b) Employees' death benefits.—
"(1) General rule.—Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee.
"(2) Special rules for paragraph (1).—
"(A) $5,000 limitation.—The aggregate amounts excludable under paragraph (1) with respect to the death of any employee shall not exceed $5,000."

238

death benefits were wholly exempt until the effective date of the Revenue Code of 1954.

Judgment is awarded to plaintiff for $4,622.24 with interest from March 15, 1953, and costs.

The foregoing opinion is intended to embody findings of fact and conclusions of law.