**Mary M. PACKARD, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
Dec. 23, 1959.

Herbert A. Finneson, White Plains, N. Y., for plaintiff.

. S. Hazard Gillespie, Jr., U. S. Atty., S. D. of New York, New York City, for the United States. Marguerite de Smet, Asst. U. S. Atty., New York City, of counsel.

LEVET, District Judge.

This action is a suit for refund of income taxes assessed and collected from plaintiff for the years 1953, 1954 and 1955, together with interest thereon, in the aggregate amount of $9,020.91.

The plaintiff has moved for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., granting a summary judgment and the defendant has filed a cross-motion seeking the same relief in its favor.

The facts are not in dispute and are as follows:

1. From October 5, 1929 until his death on January 25, 1953, Arthur W. Packard, plaintiff's husband, was employed by John D. Rockefeller, Jr. as secretary of Mr. Rockefeller's Philanthropic Committee. The decedent's duties consisted of considering and making recommendations concerning various appeals directed to Mr. Rockefeller for philanthropic assistance.

2. On January 30, 1953, Mr. Rockefeller wrote to the plaintiff-widow, stating: "In recognition of your husband's long and valued relationship to our office and in line with an office custom, I am glad to advise you that beginning with February 1st of this year the salary which Mr. Packard was receiving at the time of his death, $20,000., will be paid to you for a period of two years." (Exhibit A of plaintiff's affidavit in support of her motion for summary judgment.)

3. The payments were made as follows:

(a) For the months of February through December, 1953 .....................$18,333.30
(b) For the twelve months of 1954 ........ 20,000.00
(c) For January, 1955 .................. 1,666.67

Total ..........$39,999.97

4. In her income tax returns for the years in question, the plaintiff reported these sums as income and paid the tax upon them in the following amounts:

1953 .......................$3,316.66
1954 ...................... 5,523.28
1955 ...................... 180.97

Total ..........$9,020.91

5. On or about March 11, 1957, plaintiff filed with the District Director of Internal Revenue claims for refund for the years in question, alleging that the payments received from Mr. Rockefeller had been erroneously reported as income by her and asserting that these payments in fact represented non-taxable gifts made to her by her deceased husband's employer. These claims for refund were rejected on or about January 29, 1958 and the instant suit was commenced.

6. John D. Rockefeller, Jr. did not take any deductions in 1953, 1954 or 1955 on his personal or business income tax returns with respect to his payments to the plaintiff. Since Mr. Packard was engaged solely in connection with Mr. Rockefeller's charitable activities, Mr. Rockefeller never took a deduction for any salary ever paid to Mr. Packard.

7. An inspection of John D. Rockefeller, Jr.'s Gift Tax Returns for the years in question indicates that he did not report any portion of the payments to the plaintiff as gifts in those years.

8. In an interrogatory propounded pursuant to Rule 31 of the Federal Rules of Civil Procedure, Mr. Rockefeller was asked whether he "intended such payments to be a gift to Mary M. Packard." (Question 6(d) of defendant's interrogatories, filed on July 1, 1959.) He replied: "Not as a gift but in recognition of the long and faithful service rendered to me by Mr. Packard." (Answer 6(d) to interrogatories, filed on July 16, 1959.)

9. Questioned in interrogatory No. 8 about his statement in the letter of January 30, 1953, that the payments would be made "in line with an office custom," Mr. Rockefeller stated: "There was an office custom, voluntary in nature and subject to change at any time, to pay

the salaries of deceased employees to their widows for specified periods. * * * The custom was discretionary, but up until the time of Mr. Packard's death had been followed uniformly in every case." (Answer 8.)

10. Mr. Rockefeller was not obligated to make the payments by reason of any pension or other plan, contract or arrangement with the deceased employee, Mr. Arthur W. Packard, or the plaintiff or any other person which would have created an express legal right for plaintiff to receive such payments. (See sworn transcripts of depositions of Mary M. Packard, Robert W. Gumbel and Philip F. Keebler, Exhibit B of plaintiff's motion for summary judgment.)

The question presented is whether the payments received by the plaintiff constituted income to her or a gift.

Since the plaintiff's husband died before August 16, 1954, the effective date of the Internal Revenue Code of 1954, the Internal Revenue Code of 1939 is applicable. The applicable portion of Section 22 of the 1939 Code provides as follows:

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal services * * * of whatever kind and in whatever form paid * * *

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * *

"(3) Gifts, bequests, devises, and inheritances. The value of

property acquired by gift, bequest, * * * or inheritance * * *." 26 U.S.C.A. (I.R.C.1939) §§ 22(a), 22(b) (3).

The Supreme Court has recognized that a "narrow line" exists between taxable bonuses and tax-free gifts. Helvering v. American Dental Co., 1943, 318 U.S. 322, 327, 63 S.Ct. 577, 87 L.Ed. 785. The unsettled nature of this area is shown by the decision of the Second Circuit Court of Appeals in Stanton v. United States, 1959, 268 F.2d 727, and that of the Court of Appeals for the Fourth Circuit in Bounds v. United States, 1958, 262 F.2d 876. Certiorari has recently been granted in the Stanton case. 1959, 80 S.Ct. 294. In fact, the Commissioner's position on this particular question has changed on several occasions [1] and in the face of a number of decisions adverse to the Internal Revenue Service on this point an Information Release was promulgated by the Commissioner announcing that the Internal Revenue Service would no longer litigate under the Internal Revenue Code of 1939 cases involving voluntary payments to widows by their deceased husband's employers "unless there is clear evidence that they were intended as compensation for services, or where the payments may be considered as dividends." [2]

Payments made by an employer to a beneficiary of an employee made pursuant to an enforceable contract between employer and employee are not gifts even though the beneficiary has done nothing to earn them. Flarsheim v. United States, 8 Cir., 1946, 156 F.2d 105; Varnedoe v. Allen, 5 Cir., 1946, 158 F.2d 467, certiorari denied 330 U. S. 821, 67 S.Ct. 771, 91 L.Ed. 1272; Rodner v. United States, D.C.S.D.N.Y.

[1]. Compare I.T. 3329, 1939–2 Cum.Bull. 153, which stated: "When an allowance is paid by an organization to which the recipient has rendered no service, the amount is deemed to be a gift or gratuity and is not subject to Federal income tax in the hands of the recipient" with I.T. 4027, 1950–2 Cum.Bull. 9: "It is the position of the Bureau that irrespective of a 'plan', voluntary or involuntary, def-

inite or indefinite, payments of the type herein considered constitute taxable income, and it is held that payments made by an employer to the widow of a deceased officer or employee, in consideration of services by the officer or employee, are includable in the gross income of the widow for Federal income tax purposes."

[2]. T.I.R.–87, August 25, 1958.

1957, 149 F.Supp. 233. In addition, a voluntary payment can also be compensation. Old Colony Trust Co. v. Commissioner, 1929, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Bausch's Estate v. Commissioner of Internal Revenue, 2 Cir., 1951, 186 F.2d 313.

In the recent case of Stanton v. United States, 2 Cir., 1959, 268 F.2d 727, certiorari granted 80 S.Ct. 294, the Court of Appeals for the Second Circuit set forth the test to be applied in a situation similar to this:

"It is clear in the decisions, perhaps especially in this circuit, that in such situations the test of 'compensation' is not whether the donor is under any legal obligation to make the payment; but that it may be his 'income' although the donee had no right to enforce its payment. The last of our decisions in Carragan v. Commissioner, 2 Cir., 197 F.2d 246, 248, so declares and in Nickelsburg v. Commissioner, 2 Cir., 154 F.2d 70, we said (at page 71) that the test was whether 'what was added was by way of more compensation for a deserving employee or merely to satisfy the employer's desire to become a benefactor.' That is indeed not an exact standard, but unhappily it is about as good as any that has been made. * * *" 268 F.2d at page 728.

The difficulty in applying this test is pointed out in that same opinion where Judge Hand later states:

"* * * Probably, we should suppose that, whenever an employee has discharged his duties with outstanding fidelity and capacity, any 'honorarium' results from mixed motives: (1) the employer feels that the employee has given more than the bare measure of service required, and that the employer has therefore received more than he could legally have exacted; and (2) that the employer feels friendship, perhaps even affection, for the employee. * * *" 268 F.2d at page 729.

In his dissenting opinion in Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, the only decision of the Supreme Court on the subject, Justice Brandeis set forth a similar test:

"* * * Their teaching makes it plain that the categories of 'gift' and 'compensation' are not always mutually exclusive, but at times can overlap. What controls is not the presence or absence of consideration. What controls is the intention with which payment, however voluntary, has been made. Has it been made with the intention that services rendered in the past shall be requited more completely, though full acquittance has been given? If so, it bears a tax. Has it been made to show good will, esteem, or kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt." 302 U.S. at page 45, 58 S.Ct. at page 66.

In the Bogardus case an "honorarium" was given by a corporation, called "Unopco," which had the same shareholders as the Universal Oil Products Company, which had been the employer of the donee. The Supreme Court, in finding for the taxpayer, stated:

"From these we learn that the recipients of the bounty here in question never were employees of the Unopco Company, or of any of its stockholders. * * * And most significant is the further stipulated fact that the disbursements were *not made or intended to be made* for any services rendered or to be rendered or for any consideration given or to be given by any of said employees, attorneys, or experts to said Unopco Corporation or to any of its stockholders. If the disbursements had been made by the Universal Company, or by stockholders of that company still interested in its success and in the maintenance

of the good will and loyalty of its employees, there might be ground for the inference that they were payments of additional compensation. Compare Noel v. Parrott, 4 Cir., 15 F.2d 669. But such an inference, even upon one of these suppositions, well might strain the realities in the light of the foregoing facts. However that may be, the disbursements here were authorized and the burden borne by persons who were then strangers to the Universal Company and its employees, under no obligation, legal or otherwise, to that company or to any of its present or former employees. There is entirely lacking the constraining force of any moral or legal duty as well as the incentive of anticipated benefit of any kind beyond the satisfaction which flows from the performance of a generous act. * * * 302 U.S. at pages 40–41, 58 S.Ct. at page 64.

In Stanton v. United States, 2 Cir., 1959, 268 F.2d 727, the Second Circuit Court of Appeals, in a case involving a "gratuity" awarded to a retiring president and director of an operating company organized to manage the real property of a church pursuant to a resolution by the company awarding the annuity "in appreciation of the services rendered" and provided that the taxpayer abandon all rights to pension and retirement benefits, found that the gratuity was income to the taxpayer. In analyzing the Bogardus case, the court emphasized the finding of a "separate venture" there and distinguished that case by pointing to the fact that the operating company continued, that this was a single payment made in appreciation of the particular service of Mr. Stanton, that the proviso that Mr. Stanton abandon all rights to pension and retirement benefits was inconsistent with a finding that the payment was made wholly from generosity, and that there was no evidence that personal affection entered into the payment.

Of course, the Stanton case involved a payment to the employee himself. In that situation there is a strong presumption that a payment by an employer to his employee or his estate is made for services rendered and consequently not a gift. Willkie v. Commissioner of Internal Revenue, 6 Cir., 1942, 127 F.2d 953. Since the payments in this case were not made to the employee or his estate, there is no such presumption. In fact, it has been stated that in every case where the question, whether a gratuitous payment by an employer to a presumptive beneficiary of a deceased was a gift, has been squarely presented, the answer has been in the affirmative. Rodner v. United States, D. C.S.D.N.Y.1957, 149 F.Supp. 233, 235.

To determine whether the payment is wholly gratuitous, to satisfy the employer's desire to become a benefactor, or, on the other hand, more compensation for a deserving employee, it is obvious that the intent of the payor must be ascertained.

In attempting to ascertain this intent, the courts have placed considerable reliance on the presence of a plan or policy in the past of making similar payments. See Bounds v. United States, 4 Cir., 1958, 262 F.2d 876, where the court stated: "It can be seen that payment to a widow pursuant to a long-established plan, although legally unenforceable, tends to overcome the gratuitous nature of the transaction. * * * Undoubtedly, the courts which have treated payments to widows as compensation have been influenced in large measure by the employer's established practice to provide for widows of deceased executives." At page 881. The Court of Appeals for the Second Circuit in Bausch's Estate v. Commissioner of Internal Revenue, 2 Cir., 1951, 186 F. 2d 313, also emphasized the presence of such a continued practice on the part of the payor.

In the aforementioned Bounds case, the absence of such a plan was of dominant importance in the finding that the

payment in question was a gift. The court stated: "[T]he common element found in the cases cited by the Government, and conspicuously absent here, is a long-established policy of the employer to provide for the wife of a deceased officer for a limited period after his death. Even though it was never suggested in those cases that the widow had an enforceable legal right to the payments, the courts have recognized not only the 'moral' obligation of the employer to continue the established practice but also the immediate benefits derived by the employer from such a plan." 262 F.2d 881.

This moral obligation and the benefit to the corporation are spelled out in Simpson v. United States, 7 Cir., 1958, 261 F.2d 497, 500 as follows: "We find from the record that the corporation did derive a benefit from the payment. It was made in pursuance of a long-established plan consistently followed by the corporation. Adherence to the plan demonstrates that these payments to the widows of deceased executives were made for the purpose of encouraging living executives to continue in their employment by the corporation. * * * Insofar as the plan in question tended to deter the resignation of these key executives, it would be unrealistic to say that it was not for the benefit of the corporation. * * * While the resolution of 1950 attempted to protect the company from any legal obligation to make payments, it clearly imposed a moral obligation. As a practical matter, the company had to pay taxpayer in order to preserve its integrity in the eyes of the other executives whose wives were to receive similar payments in the future." At pages 500–501.

References to such a plan or policy in the case at bar are as follows:

1. In his letter of January 30, 1953, Mr. Rockefeller informed the plaintiff that her husband's salary would be paid to her for two years "in line with an office custom." (Exhibit A of plaintiff's affidavit.)

2. In interrogatories propounded to John D. Rockefeller, Jr. on July 1, 1959, the government asked Mr. Rockefeller about this "office custom" and he replied in his answers of July 9, 1959 that although this custom was discretionary and voluntary "up until the time of Mr. Packard's death [it] had been followed uniformly in every case."

Upon this evidence submitted in the case it is not clear what the nature and extent of this "office custom" was. There is no memorandum or corporate resolution to examine, which is usually the case where there is a plan or policy in question. See Bounds v. United States, 4 Cir., 1958, 262 F.2d 876; Simpson v. United States, 7 Cir., 1958, 261 F.2d 497. There is no indication of how long the policy had been in effect or how many persons were employed in the office and how many persons had benefited from the custom in the past. Although Mr. Rockefeller was queried as to the existence of any legal obligation to make such payment (interrogatory No. 6 propounded to John D. Rockefeller, Jr. on July 1, 1959), he was not asked about a possible moral obligation.

In the deposition of the plaintiff, Mary M. Packard, taken on September 9, 1958 (Exhibit B of plaintiff's affidavit), although she was questioned as to the existence of an obligation on the part of Mr. Rockefeller to make such a payment, she was not asked whether she knew of the existence of such an office custom or whether such a payment had in fact been suggested to her by Mr. Rockefeller previously. Other employees, Robert W. Gumbel and Philip F. Keebler (Exhibit B of plaintiff's affidavit) were not questioned as to their feelings toward this custom and whether it played any part in their continued employment.

In the light of this paucity of evidence, it is impossible to find any moral obligation on the part of Mr. Rockefeller which might have influenced his motives in making the payment. The situation here does not give rise to an inference that such a moral obligation influenced the payment. The nature of Mr. Pack-

515

ard's duties militates against any such conclusion. He was the secretary of the Philanthropic Committee. The office custom to continue payments for specified periods after the death of an employee was not "a means of retaining a valuable asset as long as possible" as in Simpson v. United States, 7 Cir., 1958, 261 F.2d 497. This was not a profit-making enterprise. The action of Mr. Rockefeller was not similar to that of a grateful Board of Directors voting additional compensation to a person who has contributed to a successful business enterprise as in Nickelsburg v. Commissioner of Internal Revenue, 2 Cir., 1946, 154 F.2d 70, 71.

 A factor in examining the intent with which the payment was made is the past compensation paid to the employee. It does not matter, as previously shown, that no enforceable obligation exists. "Unlike the law of contracts, however, the Internal Revenue Code recognizes past consideration as a valid exchange for present compensation. It does not matter that the corporation had nothing but a clearer conscience to gain from the payment of adequate compensation for past services." Carragan v. Commissioner of Internal Revenue, 2 Cir., 1952, 197 F.2d 246, 248. In that case, an allowance to an employee "in recognition of the faithful services rendered to the Corporation and its predecessors over a period of 26 years and for which services, the compensation * * * has been entirely inadequate * * *" (at page 248) was held to be additional compensation.

There is no showing of any inadequacy of compensation here. Mr. Packard was paid at the rate of $20,000 a year at the time of his death and there was an indication that Mr. Packard had been on a leave of absence because of ill health for some time prior to his death, during which time his salary had been continued. (Deposition of Philip F. Keebler, Exhibit B of plaintiff's affidavit.) There is thus no indication that the payment to the plaintiff was made by Mr. Rockefeller in an effort to obtain a clearer conscience.

The absence of a personal relationship would also be evidence that a further payment was not a gift. In Stanton v. United States, 2 Cir., 1959, 268 F.2d 727, the court stated: "Since Mr. Stanton's duties were exclusively financial and there is no evidence that personal affection did enter into the payment, we should not assume that it did. Indeed, the resolution was 'in appreciation of the services rendered' by him in the conduct of the business, and it is safe to assume that the 'honorarium' for practical purposes was the result of the satisfaction of the Operating Corporation for the success of his real estate ventures." At page 729.

Here, there is evidence that personal affection did enter into the payment. The letter of January 30, 1953 to Mrs. Packard speaks of "the warm regard and esteem" in which Mr. Packard was held and of Mr. Rockefeller's admiration for the courage and faith of the plaintiff. The interest which Mr. Rockefeller took in the widow is shown by the fact that she became his housekeeper on June 10, 1953 and that she is still employed by him.

In the last analysis, the intent of the donor should be ascertained by examining his statements and conduct. "Whether a payment in a given case shall be deemed taxable compensation or a gift exempt from tax depends upon the intention of the parties, and particularly that of the employer, to be determined from the facts and circumstances surrounding the transaction." Fisher v. Commissioner of Internal Revenue, 2 Cir., 1932, 59 F.2d 192, 193.

The fact that the payments to Mrs. Packard were not reported in Mr. Rockefeller's income tax returns for the years in question is of no significance in view of the fact that he never took any deduction for the salary paid to Mr. Packard.

In his letter to Mrs. Packard on January 30, 1953, Mr. Rockefeller stated

that the salary would be paid to Mrs. Packard "in recognition of your husband's long and valued relationship to our office." In response to interrogatory No. 6(d), "whether you intended such payments to be a gift to Mary M. Packard" (interrogatories propounded to John D. Rockefeller, Jr. on July 1, 1959), Mr. Rockefeller replied: "Not as a gift but in recognition of the long and faithful service rendered to me by Mr. Packard." In response to interrogatory No. 6(e), "whether you intended such payments to represent additional compensation for services rendered by Arthur W. Packard," Mr. Rockefeller replied, "No."

Mr. Rockefeller, of course, chose his words carefully. The Supreme Court in Bogardus v. Commissioner, 1937, 302 U. S. 34, 58 S.Ct. 61, 82 L.Ed. 32, had stated: "Some stress is laid on the recital to the effect that the bounty is bestowed in recognition of past loyal services. But this recital amounts to nothing more than the acknowledgement of an historic fact as a reason for making the gifts. A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient." 302 U.S. at page 44, 58 S.Ct. at page 66. See Bounds v. United States, 4 Cir., 1958, 262 F.2d 876, 882, where the court points out that a gift is rarely bestowed upon a stranger who has no relation to the donor or to someone related to the donor.

The characterization by Mr. Rockefeller that the payments were made "not as a gift," while at the same time stating they were not additional compensation, is not helpful. The courts have not placed controlling weight on the characterization of the payor in the past. Bogardus v. Commissioner, 1937, 302 U. S. 34, 43, 58 S.Ct. 61, 82 L.Ed. 32; Wallace v. Commissioner, 5 Cir., 1955, 219 F.2d 855; Nickelsburg v. Commissioner of Internal Revenue, 2 Cir., 1946, 154 F.2d 70.

█ The wording of the notification sent to Mrs. Packard concerning the payments to her is also of some significance in determining the payor's intent. Mr.

Rockefeller stated: "The salary which Mr. Packard was receiving at the time of his death, $20,000, will be paid to you for a period of two years." It did not indicate that a gift would be made to her or that an amount equal to the salary would be paid. Although this wording and the fact that the amount paid was equal to his salary is entitled to some weight in evaluating the intent, neither the characterization of the payment by the payor nor the measure of the amount paid has been held to be of controlling significance. See Bounds v. United States, 4 Cir., 1958, 262 F.2d 876; Jackson v. Granquist, D.C.Or.1957, 169 F. Supp. 442; Bank of the Southwest National Association v. United States, D. C.S.D.Tex.1958, 165 F.Supp. 200; Luntz v. Commissioner, 1958, 29 T.C. 647, C CH Dec. 22, 801; Estate of Arthur W. Hellstrom v. Commissioner, 1955, 24 T. C. 916.

In Rodner v. United States, D.C.S.D. N.Y.1957, 149 F.Supp. 233, the court found that the amount to be paid to Mrs. Rodner was fixed with reference to the salary of her husband and that there was no evidence that the needs of the widow were taken into account. Despite the fact that a custom was attempted to be shown under which similar payments had been made to the widow of every other married executive who died between 1946 and 1952 (the husband died in 1952), Judge Dimock found that the payment was a gift.

The fact that the payments were measured by the salary paid to the decedent was but one fact listed by the Court of Appeals for the Second Circuit in Bausch's Estate v. Commissioner of Internal Revenue, 2 Cir., 1951, 186 F.2d 313 in the finding that the payment there was a reward for services rendered and consequently income. The government has taken the position that the decision in Bausch's Estate is controlling in the instant suit.

But the case of Bausch's Estate v. Commissioner of Internal Revenue involved payments to the executors of deceased employees, similar payments to

the heirs or estates of deceased officers were pointed out with particularity, and most important, the payments were deducted from the income tax returns of the corporation in the years in which they were paid. This last factor is important in determining the intent with which the payment was made. It can be overcome by other evidence of the intent as in Bounds v. United States, 4 Cir., 1958, 262 F.2d 876, but the importance of that fact in the Bausch's Estate decision is shown by the fact that the Court of Appeals relied on Fisher v. Commissioner of Internal Revenue, 2 Cir., 59 F.2d 192. In the Fisher case, the court stated: "In the case at bar, the Holmes Company clearly indicated its intention by charging the payment upon its books to salary account and so reporting it in its tax returns." At page 193.

■ The motion of the government for summary judgment must be denied. There is no convincing evidence here that what was added was by way of more compensation for a deserving employee. There is little to indicate that the payments were a reward for past services. The payment was voluntary, made directly to a widow who performed no services to the corporation, which received no benefit from the payment, and the husband was apparently fully compensated for his services during his lifetime. See Luntz v. Commissioner, 1958, 29 T.C. 647, CCH Dec. 22, 801.

The evidence that there was an office custom to pay the salaries of deceased employees which was discretionary but was followed uniformly is not sufficient to establish a plan which would negative a donative intent. In any event, it is not clear under the circumstances of this case whether such a policy could be held to negative the gratuitous payment or would merely show that this donative intent was manifested on a number of similar occasions.

The motion of the plaintiff for summary judgment must also be denied. There is no convincing evidence that the payment was merely to satisfy the em-

ployer's desire to become a benefactor. It is true that there was no report of the amount paid on the business income tax returns of Mr. Rockefeller, but there was no report of the payments on the gift tax returns either. An examination of the gift tax returns might be helpful in determining what Mr. Rockefeller considered as "gifts."

It cannot be said that there is no material fact here in issue. The all-important intent of Mr. Rockefeller has not been clearly shown. He himself has stated that the payment was intended "not as a gift."

The existence of a long-established policy is of considerable importance in divining his motive. See Bounds v. United States, 2 Cir., 1958, 262 F.2d 876. The nature and extent of this policy is not clearly shown and it is not enough to state that the custom was voluntary and not enforceable. That is not the test to be employed. The existence of a possible moral obligation is significant. There is no evidence of knowledge by the plaintiff of the existence of such a custom or of the feelings of other employees toward the policy.

It is most unsatisfactory to determine the intent of the employer where his testimony is confined to short answers to 13 interrogatories. In fact, it is questionable whether this question is susceptible to the summary procedure process. See Stanton v. United States, D.C.E.D.N.Y.1955, 137 F.Supp. 803.

■ In Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464 the Second Circuit Court of Appeals pointed out that where credibility is crucial summary judgment becomes improper and a trial indispensable.

In Bishop v. Shaughnessy, D.C.N.D.N.Y.1950, 119 F.Supp. 62, where the ultimate fact was whether a gift had been made, the court, relying on Doehler Metal Furniture Co., Inc. v. United States, 2 Cir., 1945, 149 F.2d 130, found that summary judgment was improper where a determination of the donor's in-

518

tention involved a question of credibility.

We are mindful of the admonition of the Second Circuit Court of Appeals in Doehler Metal Furniture Co., Inc. v. United States, 2 Cir., 1945, 149 F.2d 130. "We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. * * * The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered." At page 135. See also Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 470–472 on the limitations of depositions.

The effect of this office custom upon the intent of the payor has not been clearly shown. Accordingly, the plaintiff's motion for summary judgment is also denied.

So ordered.