**Ellis H. WILNER and Lucille Shachtman, Executors of the Estate of Isidore Wilner, deceased, and Martha Wilner, individually and as Executrix of the Estate of Isidore Wilner, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

July 5, 1961.

Helfat & Helfat, New York City, J. Nathan Helfat, New York City, of counsel, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., New York City, Morton L. Ginsberg, Asst. U. S. Atty., New York City, of counsel, for defendant.

WEINFELD, District Judge.

These are cross-motions for summary judgment in an action to recover alleged income tax overpayments. The controversy revolves about the nature of payments made by a corporation to the widow of an employee. The facts are stipulated and are supplemented on this motion by affidavits of the widow and the directors of the corporation who voted in favor of the resolution pursuant to which the payments were made.

Isidore Wilner, the husband of the taxpayer plaintiff, at the time of his death in June 1955, had been in the employ of Henry Glass & Co., a corporation, for over forty years. His annual salary for the five years preceding his death had been $28,000. He also had been a director, vice president and stockholder for many years. Wilner owned 800 out of a total of 3650 shares of com-

mon stock, and 212 out of 2441 preferred shares. Except for a nephew who owned 870 shares of common stock, he and another were the largest individual stockholders. The plaintiff widow herein was never an officer, director or employee of the corporation, and, until her husband's death, was not a stockholder.

On July 5, 1955, the Board of Directors passed a resolution directing the payment to Wilner's widow of a sum equal to one year's salary, spread over a two-year period. Pursuant thereto, the corporation paid Wilner's widow $7,000 in 1955, $14,000 during 1956 and $7,000 in 1957. The only payments involved in this litigation are those made in 1955 and 1956.

The payments were entered on the books of the corporation as "Administrative Expenses" under the caption of "Payment to Widows of Former Employees," and were deducted by the corporation as ordinary and necessary business expenses for income tax purposes. On two previous occasions, one in 1945 and another in 1946, pursuant to corporate resolutions, payments of one year's salary were made to the widows of deceased officers. The payments were entered on the corporate books in the same manner as those in the instant case. However, in the only other instances where officers of the corporation passed away while in office, in 1916 and 1939, no payment was made to the widows.

No gift tax was paid on the moneys received by the plaintiff widow. In fact, she reported the sums as income on her 1955 and 1956 income tax returns, and after a deduction of $5,000 pursuant to section 101(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 101(b), paid the taxes due thereon. Thereafter, she filed a claim for refund, contending that the payments were gifts and hence tax exempt. Upon rejection of her claim, the instant suit was filed.

Two separate issues are presented—(1) whether, as plaintiff contends, the payments constituted a gift, excludable from gross income under section 102(a) [1] of the Internal Revenue Code of 1954, 26 U.S.C. § 102(a), and (2) whether, as the Government urges, even if the payments qualify as gifts under section 102(a), nonetheless they are excludable from gross income only up to $5,000 under section 101(b) of the 1954 Code,[2] since they were paid to the widow by the employer "by reason ·of the death of the employee." Essentially, the Government's position, however variously stated, is that as to such payments the general exclusion of gifts from gross income contained in section 102(a) is now controlled by the specific limitation of section 101(b). This view, if upheld, would be dispositive of the entire case; accordingly, we consider it first.

The Government acknowledges, as has also been recognized by the Internal Revenue Service,[3] that under the Internal Revenue Code of 1939 voluntary payments to widows by their deceased hus-

---

1. Section 102. "Gifts and inheritances.
  "(a) General rule.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

2. Section 101. "Certain death benefits.
  *    *    *    *    *
  "(b) Employees' death benefits.—
  "(1) General rule.—Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee.
  "(2) Special rules for paragraph (1)—
  "(A) $5,000 limitation.—The aggregate amounts excludable under paragraph (1)

with respect to the death of any employee shall not exceed $5,000."

3. Indeed, in view of many adverse court decisions in cases arising under the 1939 Code, the Internal Revenue Service adopted an administrative policy that "in cases involving voluntary payments to widows by their deceased husbands' employers * * * it will no longer litigate, under the Internal Revenue Code of 1939, cases involving the taxability of such payments unless there is clear evidence that they were intended as compensation for services, or where the payments may be considered as dividends." T.I.R. 87, Aug. 25, 1958, CCH 1958 Stand.Fed.Tax Rep. ¶ 6662.

bands' employers, which qualified as gifts under section 22(b) (3) of the Code, 26 U.S.C. § 22(b) (3), were excludable without limitation from gross income and not subject to income tax.[4] But it contends that this was changed by the employees' death benefit provision, section 101(b) of the Internal Revenue Code of 1954, which revised section 22(b) (1) (B), the comparable section of the 1939 Code.

Section 22(b) (1) (B) of the 1939 Code [5] provided that death benefits paid under a contract of employment to the beneficiary of a deceased employee were taxable only to the extent that they were in excess of $5,000. However, the benefit of the $5,000 exemption did not apply to like payments when made by the employer, not under the force of a legal commitment, but voluntarily, and which did not qualify as a gift. Section 101(b) (1) of the 1954 Internal Revenue Code omitted the reference to the contractual obligation, and generally provided for a $5,000 exclusion from gross income on "amounts received * * * by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee." [6]

The Government contends that this change in the 1954 Code manifests a congressional purpose to treat as gross income all payments, in excess of $5,000, made by an employer to a beneficiary by reason of the death of an employee, whether or not such payments would otherwise qualify as gifts under section 102(a)—in short, that the latter section excluding gifts from gross income is inapplicable in those instances where payments are made by reason of the death of an employee.

To adopt this construction would mean that gifts, the motivation for which sprang from a deceased employee's relationship to an employer, would become taxable income (beyond $5,000), whereas all other gifts would continue to enjoy, as previously, full tax exemption. Apart from a serious constitutional issue which would arise if such discriminatory treatment were recognized,[7] neither the statutory language of section 101(b), nor the legislative history, supports the Government's position.

We start with the proposition that the various revenue acts—beginning with the Act of 1913 [8]—have consistently excluded gifts from gross income and recognized them as nontaxable. Similarly, section 102(a) of the 1954 Code left unchanged the comparable provision of the 1939 Code, section 22(b) (3).[9] The Government would deny force to this exclusion provision simply because a gift has its origin in the employer-employee relationship; it would abandon the dichotomy between a gift, and those payments which do not qualify as gifts, merely because both are made "by or on behalf of an employer and are paid by reason of the death of the employee." Thus, indirectly, it would make the business motive the test of whether such payments qualified as gifts—a criterion which it unsuccessfully sought to persuade the Supreme Court to adopt.[10]

To buttress its position, the Government relies upon the rule of statutory construction, that "general language of a statutory provision, although broad enough to include it, will not be held

---

4. E. g., Bounds v. United States, 4 Cir., 1958, 262 F.2d 876; Rodner v. United States, D.C.S.D.N.Y.1957, 149 F.Supp. 233; Luntz v. Commissioner, 1958, 29 T.C. 647; Estate of Hellstrom v. Commissioner, 1955, 24 T.C. 916.

5. 65 Stat. 483.

6. 26 U.S.C. § 101(b) (1).

7. It is open to question whether Congress has the power under the Constitution to impose a direct and unapportioned tax on amounts received as gifts. U.S.Const. Art. I, sec. 2, cl. 3; Art. I, sec. 9, cl. 4; Amend. XVI.

8. 38 Stat. 167. See C. I. R. v. Duberstein, 1960, 363 U.S. 278, 284, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

9. See H.R.Rep. No. 1337, 83rd Cong., 2d Sess., in 3 U.S.Code, Cong. and Admin. News 4108 (1954).

10. C. I. R. v. Duberstein, 1960, 363 U.S. 278, 284, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

to apply to a matter specifically dealt with in another part of the same enactment." [11] However, its reliance is misplaced, for the rule is inapplicable in the instant situation. Gifts are declared excludable from gross income under section 102(a) without limitation or exception. The term is all-inclusive. On the other hand, gifts are neither mentioned nor "specifically dealt with" in section 101(b), and neither section makes any reference to the other. Nothing in the language of either provision indicates that Congress singled out for special treatment gifts which an employer is moved to make upon the death of an employee "out of affection, respect, admiration, charity or like impulses." [12]

Moreover, the legislative history of section 101(b) abundantly demonstrates that it had no relationship to the "gift-compensation" controversy—on the contrary, it was enacted to eliminate discriminatory treatment against those recipients of payments from employers which were made on a voluntary basis, but which did not qualify as gifts under section 102(a).

As already noted, the $5,000 exemption under section 22(b) (1) (B) of the 1939 Code, came into play only when the payments were made under a contract between the employer and the deceased employee. This produced anomalous and inequitable results. Many employers made payments to widows or other beneficiaries of such employees, not under the compulsion of a legal commitment, but on a voluntary basis. Consequently, those receiving such payments were subject to income tax on the full amount. Leaders of finance, industry and professional groups appeared before the congressional committee conducting hearings on the proposed 1954 Revenue Code,

and urged that the inequity be removed.[13] Typical of the many statements submitted is the following:

"Some * * * companies are desirous of contributing an amount to the widows and dependents of their employees to ease the shock, hardship, and financial burden inevitably associated with the death of a wage earner of a family group. However, they do not wish to be bound to the payment of a fixed sum regardless of the needs of the widows and dependents, but wish to have the amount of the payment regulated by the requirements of the recipients in each specific case. These payments have all of the characteristics of a death or insurance payment; however, under section 22(b) of the Internal Revenue Code, such payments are taxable to the recipient, unless the payment is made pursuant to a firm contract as stated above.

"The needs of the widows and dependents of wage earners who die are the same regardless of whether the employer is bound by contract to make a payment, and it is manifestly inequitable to consider these payments as taxable income to the widows and dependents in some cases and to treat such amounts as nontaxable to widows and dependents in other substantially identical situations." [14]

The Committee report makes it unmistakably clear that the elimination of the contractual requirement in section 101 (b) (1) was made in response to these pleas. Thus, the House Committee report states:

"Present law provides a special exclusion of up to $5,000 for pay-

11. D. Ginsberg & Sons, Inc. v. Popkin, 1932, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704. See United States v. Chase, 1890, 135 U.S. 255, 260, 10 S. Ct. 756, 34 L.Ed. 117.

12. Robertson v. United States, 1952, 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L.Ed. 1237, cited with approval in C. I. R. v.

Duberstein, 1960, 363 U.S. 278, 285, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

13. See Hearings on General Revenue Revision, House Committee on Ways and Means, 83rd Cong., 1st Sess., pp. 363–382 (July 14, 1953).

14. Id. at 374.

ments by an employer to beneficiaries of a deceased employee. Under existing law, however, this exclusion is available only where the employer is under a contractual obligation to pay the death benefits.

\* \* \* \* \* \*

"Restricting the exemption to benefits paid under a contract discriminates against those who receive benefits where this contractual obligation does not exist. To avoid this problem your committee's bill extends this exclusion to death benefits whether or not paid under a contract."[15]

This Court has not found, nor has Government counsel directed its attention to, a single statement in any report or the debates which even remotely suggests that the change in the 1954 Code was intended to override the consistent congressional policy of excluding gifts from gross income, simply because made by an employer to a beneficiary by reason of the death of an employee. To hold, as the Government contends, that such payments which otherwise qualify as gifts under section 102(a) are subject to the $5,000 limitation of section 101(b) would not only rewrite the law, but would ascribe to Congress a purpose to make a radical departure from consistent and long-standing treatment of gifts. Neither the language of the Act, nor its history, supports such a construction. This conclusion is in accord with those few cases which have considered and passed upon the precise issue.[16] The Court is aware of contrary obiter dicta in two cas-

es,[17] but with the utmost respect to the two distinguished jurists who noted concurrence with the Government's view, I most respectfully disagree. Thus, we reach the next question of whether or not the payments in the instant case qualify as gifts under section 102(a).

█ In addition to the facts already adverted to, the parties have stipulated to other matters, and each urges that upon all the undisputed facts, the inferences conclusively favor its position. However, the fact that the parties agree that the case is ripe for summary judgment is not conclusive upon the Court if a material fact remains at issue.[18]

█ The taxpayer, in urging summary judgment in her favor, relies upon the following: the absence of any obligation upon the corporation to make the payment; the voluntariness of the payments; the adequacy of the compensation paid to decedent for his services; the direct payment of the moneys to the widow and not to his estate; the fact that, with respect to a loan owed by decedent to the corporation, no deductions were made from the payments to the widow, but on the contrary, his accrued salary and dividends on his stock were offset against the loan and the balance was paid by decedent's estate, thereby emphasizing a definite intent to treat the payments to the widow as gratuitously made and solely for her benefit; and, finally, that no services were rendered by the widow.

The Government, in urging summary judgment in its favor, stresses, in part, the identity in amount between the pay-

15. H.R.Rep. No. 1337, 83rd Cong., 2d Sess., in 3 U.S.Code, Cong. and Admin. News 4038 (1954).

16. United States v. Kasynski, 10 Cir., 1960, 284 F.2d 143; Frankel v. United States, D.C.Minn.1961, 192 F.Supp. 776; Cowan v. United States, D.C.N.D.Ga. 1960, 191 F.Supp. 703; Reed v. United States, D.C.W.D.Ky.1959, 177 F.Supp. 205, affirmed on opinion below, 6 Cir., 1960, 277 F.2d 456. See also Note, 36 N.Y.U.L.Rev. 693, 711 (1961).

Although the Reed case was affirmed on appeal, the Internal Revenue Service has indicated that it will not be followed as a precedent pending further developments. T.I.R. No. 252, Sept. 12, 1960, CCH 1960 Stand.Fed.Tax Rep. ¶ 6615.

17. Bounds v. United States, 4 Cir., 1958, 262 F.2d 876, 878 note 2; Rodner v. United States, D.C.S.D.N.Y.1957, 149 F. Supp. 233, 237.

18. Colby v. Klune, 2 Cir., 1949, 178 F.2d 872, 873; Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780, 784, certiorari denied 1946, 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640.

-ment to the widow and the decedent's annual salary; the adequacy of provision made for the widow as beneficiary of a $20,000 insurance policy paid for by the corporation; the designation of the payment as "compensation" in the resolution of the Board of Directors; the voting of the payments by the Board of Directors without stockholders' approval; the deduction of the payment as a corporate business expense; and finally, that the resolution noted that for many years it had been the practice of the corporation to make payments to the widows of deceased officers and employees measured by the last year's compensation of the deceased.

No one of these factors, in and of itself, is conclusive.[19] The relative importance of each must be evaluated in terms of its relationship to all other factors insofar as it may shed light on the ultimate issue in the gift-compensation controversy—the intent of the donor.[20] The trier of the fact is called upon to make an objective inquiry as to what in fact was the dominant reason for the payment—"whether what is called a gift amounts to it in reality."[21] Intent involves a state of mind and is a question of fact to be determined from all the surrounding circumstances and the inferences to be drawn therefrom. And in this focus, neither the statements which accompanied various events, nor the interpretations drawn from them by the

parties are necessarily binding upon the trier of the facts.

The Court is of the view that a reference in the corporate resolution authorizing the payment, requires an evaluation by the trier of the fact which properly can be made only upon an oral examination of those who voted for its adoption. The resolution, in addition to eulogistic references to the deceased employee's valuable services on behalf of the corporation and his contribution to its success, includes the following preamble:

> "Whereas, for many years past it has been the practice of the Corporation to continue the compensation of faithful deceased officers and employees by making periodic payments to the widow of such deceased officer or employee, a sum equivalent to the compensation paid him for the year preceding his death, * * *."

To constitute a gift, the payment must be grounded upon the donor's " 'detached and disinterested generosity.' "[22] And if it stems "from 'the incentive of anticipated benefit' of an economic nature, * * * it is not a gift."[23] Applying these principles, the Government concludes that the acknowledgment in the resolution of a long-standing practice to make payments to widows of deceased, faithful officers and employees measured in terms of their last annual compensation indicates a predetermined plan and compels the conclusion that the real pur-

---

19. The stipulated facts relied upon by the Government are merely items of varying degrees of importance. E. g.: tax treatment of payment by corporation, C. I. R. v. Duberstein, 1960, 363 U.S. 278, 287–288, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Bounds v. United States, 4 Cir., 1958, 262 F.2d 876; making of gift of corporate assets, C. I. R. v. Duberstein, supra; denominating payments as "compensation," Bounds v. United States, supra. But see Estate of Pierpont v. Commissioner, 1960, 35 T.C. 65; identity between the sum voted and decedent's salary, without reference to widow's individual needs, Estate of Hellstrom v. Commissioner, 1955, 24 T.C. 916. See United States v. Kasynski, 10 Cir., 1960, 284 F.2d 143.

Those stipulated facts stressed by taxpayer are given somewhat greater weight by the courts, but are still only factors in the overall picture. Luntz v. Commissioner, 1958, 29 T.C. 647, 650; Estate of Hellstrom v. Commissioner, supra. See Bounds v. United States, supra.

20. C. I. R. v. Duberstein, 1960, 363 U.S. 278, 286, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32.

21. C. I. R. v. Duberstein, 80 S.Ct. 1190, 1197, supra, note 19.

22. Id. 363 U.S. at page 285, 80 S.Ct. at page 1197.

23. Ibid.

pose of the corporation was economic self-benefit, and consequently that the payments here made fail to meet the test enunciated in Duberstein.

If such a plan did exist, it might well be decisive of the issues in the instant case, for it has been held that such a program encourages those persons whose survivors would benefit upon their death to remain in the corporate employ, thereby bestowing a benefit upon it with the consequence that the corporation is under moral compulsion to make the payments in order to retain the confidence of potential beneficiaries of the plan or policy.[24] Contrariwise, if a plan is found not to have existed, the plaintiff's claim that the payments in fact constituted a gift is strengthened.

The plaintiff, to overcome the force of the resolution, with its implicit suggestion of the existence of a plan or a policy, has submitted affidavits which she asserts supplement "only to a minor extent" the stipulated facts. These affidavits by the directors who voted for the resolution, in substance, set forth that on the three occasions, including the instant one, when payments were made to widows, they were voluntary, were intended as gifts and that there was no obligation, legal or moral, on the part of the corporation to make any such payments. Further, by way of contrast, the taxpayer emphasizes that in the earlier years of the corporate existence, when two directors died, no payments to the widows were authorized.

It may readily be acknowledged that the statement in the resolution is not conclusive of the existence of a plan;[25] nor does the fact that two of four widows of earlier deceased officers also were recipients of death-benefit payments which equalled the last annual salary of the deceased employee establish that a plan was in effect.[26] On the other hand, the mere fact that a director who voted the payment asserts it was intended as a gift does not establish that in fact such was the intent of the donor.[27] It is the trier of the fact who must make an objective determination against the totality of all events and circumstances. And in deciding the issue, demeanor evidence becomes an important, if not a determinative factor. That one swears under oath that his action was motivated by instincts of generosity or other subjective factors, does not necessarily conclude the trier of the fact, who, on the basis of a witness' manner and appearance in testifying, might well conclude that the opposite of his sworn assertions is indeed the truth.[28]

Were the affidavits drawn to bolster the plaintiff's position to insure nontaxability of the payment, or did they in fact express the intent of the directors at the time they voted the resolution? In the light of the facts here presented, this cannot be determined upon affidavits.

The matter is not ripe for summary judgment and the respective motions are denied.

---

24. Simpson v. United States, 7 Cir., 1958, 261 F.2d 497, certiorari denied 1959, 359 U.S. 944, 79 S.Ct. 724, 3 L.Ed.2d 677. See Bausch's Estate v. Commissioner, 2 Cir., 1951, 186 F.2d 313; Estate of Russek v. Commissioner, C.C.H.1961 Tax Ct.Mem. ¶ 24,648(M).

25. See United States v. Allinger, 6 Cir., 1960, 275 F.2d 421; Packard v. United States, D.C.S.D.N.Y.1959, 179 F.Supp. 508; Estate of Hellstrom v. Commissioner, 1955, 24 T.C. 916. Cf. Bogardus v. Commissioner, 1937, 302 U.S. 34, 42–44, 58 S.Ct. 61, 82 L.Ed. 32.

26. See Rodner v. United States, D.C.S.D. N.Y.1957, 149 F.Supp. 233.

27. See Subin v. Goldsmith, 2 Cir., 224 F. 2d 753, 758–61, certiorari denied, 1955, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779; Colby v. Klune, 2 Cir., 1949, 178 F.2d 872, 873–74.

28. Cf. Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 468, 469–70; Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135.